## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**STEPHANIE MCAFEE,**

      **Plaintiff,**

        **v.**

**EARLY WARNING SERVICES, LLC,**

      **Defendant.**

**Case No. 1:25-cv-578**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## OPINION AND ORDER

Plaintiff Stephanie McAfee alleges that Defendant Early Warning Services, LLC, violated the Fair Credit Reporting Act (FCRA) when Early Warning failed to disclose McAfee's consumer file in response to a valid request from her. (*See generally* Compl., Doc. 2). Early Warning now moves to dismiss, or alternatively, for summary judgment, attaching an affidavit that offers some additional facts about Early Warning's conduct, as well as an exhibit that consists of the cover pages from the disclosure that Early Warning says it sent out. (Docs. 3, 7). The Court concludes that treating the motion as the latter is the more appropriate course, and that on the facts here, a genuine dispute of material fact might (or might not) remain as to whether Early Warning mailed McAfee the disclosure. On this record, it is simply too soon to tell. The Court therefore **DENIES** Early Warning's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 3), but only to allow limited discovery on one specific issue detailed below. Relatedly, McAfee sought leave to file a proposed surreply, (*see* Doc. 6), but the Court **DENIES** that motion.

## BACKGROUND

McAfee, a resident of Hamilton County, Ohio, sued Early Warning in the Hamilton County Municipal Court on July 8, 2025. (Doc. 2, #41–42, 53). She alleges that Early Warning is a consumer reporting agency (CRA) as that term is used in 15 U.S.C. § 1681a(f). (*Id.* at #42). That is, "for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." (*Id.* (citing 15 U.S.C. § 1681a(f))).

The Complaint asserts that, on May 23, 2025, McAfee submitted a proper, written request to Early Warning "for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1)." (*Id.*). But despite that, as of the 41 days that had passed by the time McAfee filed suit, Early Warning allegedly had yet to respond. (*Id.* at #43). As a result, McAfee claims that Early Warning breached its 15 U.S.C. § 1681g disclosure obligation, which requires CRAs to "clearly and accurately disclose" a consumer file upon a proper request for that information. 15 U.S.C. § 1681g(a)(1). McAfee alleges that the breach has resulted in "sleepless nights, racing thoughts, and repeated intrusive worries." (Doc. 2, #44). Further, McAfee alleges that the violation was either negligent or willful, bringing the case within the FCRA's private right of action for negligent violations, 15 U.S.C. § 1681o, and willful violations, 15 U.S.C. § 1681n. (*Id.* at #51).

Early Warning removed the case to this Court on August 13, 2025, invoking the Court's federal-question jurisdiction. (*See* Doc. 1, #2). It then filed the instant

motion. (*See* Doc. 3). In its supporting memorandum, Early Warning adds some facts that go beyond those McAfee submits in her Complaint. Early Warning agrees that McAfee submitted a proper request for her consumer file on May 23, 2025, and concedes that it received the request on May 28, 2025. (Def.'s Mem. in Support of Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., Doc. 3-1, #61). But according to Early Warning, it properly responded to the request on June 6, 2025. (*Id.*). It supports this assertion with an affidavit from Scott Bernier, an Early Warning employee with "knowledge of [Early Warning's] practices and procedures relating to [Early Warning's] preparation of consumer file disclosures and reinvestigations into consumer disputes." (Bernier Decl., Doc. 3-2, #70).

In his affidavit, Bernier concedes that McAfee sent a proper request for her consumer file on May 23, 2025. (*Id.*). But Bernier also avers that, on June 6, 2025, Early Warning duly sent a copy of McAfee's consumer file to the address she provided in her file-disclosure request. (*Id.* at #70–71). The affidavit further explains that Early Warning was "unaware that Plaintiff did not receive a copy of the June 6, 2025 File Disclosure." (*Id.* at #71). That's because, according to Bernier, McAfee made no effort to contact Early Warning outside of her May 23, 2025, request. (*Id.*). Indeed, Bernier reports that Early Warning became aware of McAfee's non-receipt only because McAfee filed suit. (*Id.*). Not long thereafter, on August 13, 2025, Early Warning "provided a copy of the June 6, 2025 File Disclosure by email to [McAfee]." (*Id.*). Consistent with Bernier's affidavit, Early Warning has also provided

3

documentary evidence of its alleged compliance—the cover pages to McAfee's disclosure. (*See* Doc. 7).

On this basis, Early Warning contends that it is entitled to dismissal, or alternatively, summary judgment. (*See* Doc. 3-1, #66). Specifically, it says that, even if McAfee did not, in fact, receive the June 6, 2025, disclosure, Early Warning still complied with § 1681g because, by properly mailing McAfee her consumer file, it did all that was necessary to comply with the provision. (*Id.*). In other words, Early Warning contends that the undisputed evidence shows that Early Warning sent McAfee her disclosure, and that doing so sufficed to meet § 1681g's requirements, even if McAfee did not, in fact, receive the disclosure. (*Id.*).

Unsurprisingly, McAfee disagrees. She contends that the Court may not properly consider Early Warning's extrinsic evidence at the 12(b)(6) stage. (Doc. 4, #85–86). Alternatively, McAfee says that summary judgment under a converted motion is inappropriate at this juncture because she is entitled to the discovery necessary to "demonstrate the scope of [Early Warning's] noncompliance" with the FCRA. (*Id.* at #87–89). In pressing that argument, though, she has not presented an affidavit identifying any particular facts currently unknown to her as to which discovery is necessary to respond to Early Warning's motion, *see* Fed. R. Civ. P. 56(d), a point to which the Court returns in its discussion below.

Early Warning replied, (Doc. 5), so the matter is ripe for review. But McAfee has also moved to file a Surreply in Further Opposition to Defendant's Motion to

4

Dismiss (Doc. 6). So the Court must determine whether it will consider that surreply in ruling on Early Warning's motion.

## LEGAL STANDARD

Consistent with Early Warning's suggestion, (*see* Doc. 3-1), the Court will treat Early Warning's motion as a motion for summary judgment. Under Federal Rule of Civil Procedure 12(d), a motion to dismiss "must be treated as one for summary judgment under Rule 56" if the Court considers "matters outside the pleadings." Here, the Court will consider Bernier's affidavit. And because the Court does not undertake this conversion sua sponte, it need not furnish additional notice of the conversion to McAfee. *See, e.g.*, *Child. Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700, 713 (D. Md. 2025) ("When a movant expressly captions its motion to dismiss 'in the alternative' as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.").

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant meets its burden, the nonmoving party may not rest on its pleadings, but rather must come forward with significant probative evidence to support its claim. *Celotex,* 477 U.S. at 324; *Lansing Dairy,* 39 F.3d at 1347. Whether summary judgment

is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

This Court does not have the responsibility to sua sponte search the record for evidence creating a genuine issue of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404–06 (6th Cir. 1992). That burden instead falls upon the nonmoving party to "set forth specific facts" or evidence in dispute. *Anderson*, 477 U.S. at 250 (quotation omitted). If the nonmoving party fails to make the necessary showing for an element upon which it bears the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In sum, in light of all the facts as to which Early Warning shows a lack of dispute, McAfee must in turn present some remaining "sufficient disagreement" which would necessitate submitting the matter to a jury. *See Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). That said, in making that determination, the Court must view the evidence in the light most favorable to the nonmoving party—McAfee. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must

6

afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## LAW AND ANALYSIS

### A. The Court Does Not Consider McAfee's Surreply.

Before turning to the merits of Early Warning's motion, the Court begins with a procedural issue—namely, whether the Court will consider McAfee's surreply. (*See* Doc. 6). Although this Court's local rules generally do not permit parties to file surreply briefs, a party may request leave to do so upon a showing of good cause. S.D. Ohio Civ. R. 7.2(a)(2). As this Court has previously explained, generally, good cause "exists where the reply brief raises new grounds that were not included in the movant's initial motion." *Canter v. Alkermes Blue Care Preferred Provider Plan*, 593 F. Supp. 3d 737, 744 (S.D. Ohio 2022) (cleaned up) (citation omitted). Good cause also exists "where a party seeks to 'clarify misstatements' contained in the reply brief." *Id.* at 744–45 (citation omitted).

McAfee identifies two grounds for her proposed surreply: (1) that Early Warning's Reply relies on "extrinsic evidence, including log entries and the Bernier Declaration, and newly contends that an August 13, 2025 email satisfied Defendant's statutory obligations," and (2) that the Reply "further mischaracterizes the record by asserting that material facts are undisputed, despite [McAfee's] sworn Declaration and supporting evidence to the contrary." (Doc. 6, #99–100). The Court disagrees on both fronts.

First, Early Warning attaches no new evidence to its Reply. To the extent that it relies on external evidence, that evidence was already in the record at the time Early Warning filed its motion.[1] Moreover, while there is a single sentence in Early Warning's Reply that could be construed as a new argument based on the August 13, 2025, email, (*see* Doc. 5), the Court does not reach the argument in disposing of Early Warning's motion.

Second, the Reply does not mischaracterize the record in the manner that McAfee suggests. True, the state court record contains a declaration from McAfee asserting generally that Early Warning failed to provide the required disclosure. (*See* Doc. 1-1, #21–24). But nothing in that affidavit controverts the *specific* declarations that Bernier puts forth in his affidavit. Moreover, if McAfee possesses information that *does* contradict the Bernier affidavit, nothing prevented her from putting that information forth in an affidavit attached to her Response. But she submitted no such document. Accordingly, the Court rejects McAfee's second argument for her surreply as well.

Finding both of McAfee's arguments lacking, the Court **DENIES** McAfee's Motion for Leave to File Surreply (Doc. 6).

---

[1] Admittedly, Early Warning inadvertently failed to file the cover pages from the disclosure at the time it filed its motion, which it has now supplied (*See* Doc. 7). But screenshots of the pertinent information appear in Early Warning's motion, so there is no content from the cover pages that Early Warning cites in its Reply that was not already available when Early Warning filed its motion.

**B.** **The Court Denies Early Warning's Motion for Summary Judgment Because a Genuine Dispute of Material Fact Might Remain as to Whether Early Warning Mailed the Disclosure, and Discovery is Warranted on that Question (and that Question Alone).**

With McAfee's surreply arguments out of the way, the Court turns to the merits. Early Warning's argument for summary judgment is that its June 6, 2025, disclosure satisfied § 1681g's requirements as a matter of law, even if McAfee did not, in fact, receive the disclosure. (*See* Doc. 3-1, #66; Doc. 5, #96). The Court begins by rejecting Early Warning's precedent-based argument for that conclusion. But the Court then considers, as a matter of de novo statutory interpretation, whether Early Warning's legal position is correct. And the Court concludes that it is. Given that this case is just getting off the ground, though, the Court will allow the case to proceed to limited discovery directed solely to the question of whether Early Warning in fact mailed McAfee's disclosure, a factual point on which the record is, at least at this point, unclear.

Start with Early Warning's precedent. In support of its position, Early Warning points to two cases. Both are distinguishable.

First, consider *Fields v. Checkr Group, Inc.*, No. 1:24-cv-21220, 2025 WL 2270151 (N.D. Ga. May 29, 2025), *report and recommendation adopted*, 2025 WL 2270148 (N.D. Ga. June 20, 2025). Early Warning characterizes this case as one in which the magistrate judge converted a motion to dismiss a § 1681g claim into a motion for summary judgment, and then granted that motion on the ground that there was "no issue of genuine fact that defendant sent the required disclosure to plaintiff." (Doc. 3-1, #66). But *Fields* is not quite on all fours with the present dispute.

In *Fields,* the parties did not dispute that the defendant "emailed Plaintiff a copy of the [disputed] background check." 2025 WL 2270151, at *2. Rather, the plaintiff's § 1681g claim was based on the defendant's alleged failure to "send him a *summary of his rights*" alongside the plaintiff's consumer file. *Id.* at *1 (emphasis added). The court rejected the theory because the undisputed evidence showed that the defendant's email communication expressly stated that "[a] summary of your rights can … be found attached to this email and at consumerfinance.gov." *Id.* at *9. In other words, *Fields* concerned a situation where (1) it was undisputed that the consumer received their "file" under § 1681g, and (2) the undisputed evidence also established that the disclosure included a summary of the plaintiff's rights, notwithstanding the plaintiff's allegations to the contrary. That's different from the present dispute, so *Fields* provides no backup for Early Warning's position in this case.

Likewise, *McDaniel v. Liberty Mutual Insurance Company*, No. 3:21-cv-610, 2024 WL 3647655 (W.D.N.C. Aug. 2, 2024), is no help. There, the court explicitly said that "Plaintiff does not dispute receipt of her Consumer File from Defendant. In fact, Plaintiff expressly states in her Motion [that] Defendant responded to her request and Plaintiff provides the file to the Court as an exhibit attached thereto." *Id.* at *4. That is, *McDaniel* speaks only to disputes where the plaintiff indisputably *received* the consumer file.

So, the Court rejects Early Warning's precedent-based arguments for the conclusion that its actions met § 1681g's requirements as a matter of law. But, considering the matter anew, the Court reaches Early Warning's desired conclusion

on the point of law it urges—that proof that it properly mailed the consumer's file fully satisfies its disclosure obligations under § 1681g, independent of whether McAfee received it—albeit through a different route. As best the Court can tell, this is a question of first impression. Section 1681g cases often turn on the separate question of whether a given piece of information is within the scope of a CRA's § 1681g disclosure obligation. *See, e.g., Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (holding that a CRA's internal purge dates were not covered by a consumer's § 1681g request). Indeed, this Court recently issued just such a decision. *See Watkins v. Equifax Info. Servs. LLC*, No. 1:25-cv-524, 2025 WL 3763869, at *5–6 (S.D. Ohio Dec. 30, 2025) (holding that a § 1681g plaintiff stated a claim for truncated account-number information in a FCRA disclosure). But the Court can identify no case squarely holding that proof of mail is sufficient to show compliance where the plaintiff disputes receipt. So the Court concludes it must answer that question by interpreting the statute.

In resolving questions of statutory interpretation, this Court starts, as always, with the statutory text. Section 1681g requires CRAs to "clearly and accurately disclose to the consumer" various categories of information laid out in § 1681g, including "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The key term here is the verb "disclose." The specific question the term implicates as relevant to the context here is whether *mailing* a consumer's file is sufficient to show that a CRA "disclose[d]" the file within the meaning of the statute, or whether instead proof of *receipt* is necessary. A standard dictionary

11

definition of the term "disclose" is "to make something known publicly, or to show something that was hidden."[2] But context excludes the first part of this definition. Under the statute, the disclosure is only "to the consumer," not to the public. 15 U.S.C. § 1681g. The second part of the definition, however—"to show something that was hidden"—is more on point. And admittedly, it lends some support to McAfee's view. The consumer is not "show[n]" the disclosure unless the consumer actually receives it.

But not so fast. In statutory interpretation, as in language generally, the semantic contribution of individual terms to the overall sense of a given linguistic expression is a function of the context in which those terms appear. *See* Antonin Scalia & Bryan A. Garner, Reading Law 167 (2012) ("Context is a primary determinant of meaning."); *id.* at 56 ("Of course, words are given meaning by their context."). As a result, it is a mistake to draw legal conclusions solely by mechanically matching statutory terms with dictionary definitions. *See Abuelhawa v. United States*, 556 U.S. 816, 819–20 (2009) (first citing *United States Nat. Bank of Ore. v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 438, 455 (1993); and then quoting *Dolan v. Postal Service*, 546 U.S. 481, 486 (2006)) ("Because statutes are not read as a collection of isolated phrases, a word in a statute may or may not extend to the outer limits of its definitional possibilities." (cleaned up)); *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Co.*, 519 U.S. 337, 341 (1997); and then citing *Deal v. United States*, 508 U.S. 129, 132 (1993)) ("The plainness or ambiguity

---

[2]*Disclose*, Cambridge Dictionary, https://perma.cc/R4KL-QE5A.

12

of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language was used, and the broader context of the statute as a whole." (cleaned up)).

Admittedly, § 1681g does not specify that mail is a permissible form of compliance. But an adjacent provision, § 1681h, strongly suggests that it is. Under § 1681h(a)(2), "the disclosures required to be made under section 1681g of this title shall be provided under that section *in writing*," "[e]xcept as provided in [§ 1681h](b)." 15 U.S.C. § 1681h(a)(2) (emphasis added). Section § 1681h(b)(2), which governs the "Form" of § 1681g disclosures, provides that:

> [a] consumer may specify … that disclosures under section 1681g of this title shall be made—(A) in person, upon the appearance of the consumer at the place of business of the consumer reporting agency where disclosures are regularly provided, during normal business hours, and on reasonable notice; (B) by telephone, if the consumer has made a written request for disclosure by telephone; (C) by electronic means, if available from the agency; or (D) by any other means that is available from the agency.

Thus, by default, §§ 1681g and 1681h require that CRAs make their disclosures "in writing." But consumers can receive alternative forms of disclosure (such as electronic or oral disclosure) if, and only if, they specifically request it.

That raises the question of *how*, absent a special form of disclosure requested under § 1681h(b), a CRA can comply with the "writing" requirement. Context strongly suggests that the default mode, or at least a permissible mode, of compliance is mail. While it is true that, for example, an electronic disclosure is, in some sense, a "writing," the statute expressly distinguishes between a basic default requirement— "in writing"—and electronic disclosures, and then requires that consumers request

13

the latter *before* the company is obligated to use that particular format. This suggests that mail, the paradigmatic method of sending "writing[s]" across great distances, is the default form of disclosure, or even if not the default form, at least a *permissible* one. And that is not altogether surprising—the common law has long recognized, albeit in a slightly different context, that mail is a reliable means of sending documents. *See, e.g.*, *Hagner v. United States*, 285 U.S. 427, 430 (1932) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884)) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination at the usual time and was actually received by the person to whom it was addressed.").[3]

But perhaps this is all much ado about nothing. There are simply no clues anywhere, whether in text or context, from which *any* reasonable interpreter of the FCRA could come away with the conclusion that mail is an *impermissible* means of complying with the statute. Rather, both textual inferences and common sense strongly suggest that a CRA may comply with its disclosure obligation through use of the mail.

So then the next question is whether it makes sense to read the statute as cutting off liability once the disclosure is mailed, or whether the Court should instead

---

[3] To be clear, the Court is not saying that the common-law presumption of receipt has a direct bearing in this case. After all, McAfee filed a declaration in state court denying receipt, (*see* Doc. 1-1, #22), which is sufficient to rebut the presumption, *see Laird v. Norton Healthcare, Inc.*, 442 F. App'x 194, 198 (6th Cir. 2011) (citing *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985)). Rather, the point is that the Court's inference from the statute—that mail is a permissible or perhaps even the default method of disclosure—is unsurprising given the law's longstanding, implicit recognition that mail is a generally reliable means of communication.

14

interpret Congress's directive as imposing liability on a CRA when consumers contest receipt. The Court concludes that the former reading prevails. To the extent that Congress contemplated mail as a permissible means of disclosure under § 1681g, the Court deems it vanishingly unlikely that Congress imposed liability for acts that extend beyond a given CRA's control. In light of the discussion above, that reading of the statute represents a doubtful interpretation of the disclosure obligation that Congress promulgated in the FCRA. True, the Court cannot point to any smoking-gun evidence for this conclusion. But the alternative resolution—liability for contested receipt—makes little sense in light of reasonable inferences drawn from the statutory text. So, at least on the question of law presented here, the Court agrees with Early Warning.

That said, the stage of these proceedings gives the Court some pause. If the Court ruled for Early Warning at this point, the Court would be granting summary judgment based on Early Warning's claim that it mailed the disclosure before affording McAfee any discovery to determine whether that indeed occurred. True, the Federal Rules at least contemplate that result. *See, e.g.*, *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 280 (6th Cir. 2005) ("[T]he rule contemplates that a defending party may move for summary judgment even before any discovery has been taken."). But Federal Rule of Civil Procedure 56(d) may have some bearing as well. That rule permits a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Litigants sometimes refer to this as a Rule 56(d) motion. Once the Court receives such a filing, it may "(1) defer

15

considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Thus, "when a nonmovant believes that it needs more time for discovery before it can respond to a motion for summary judgment, 'the nonmovant must file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) that details the discovery needed or file a motion for additional discovery.'" *Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022) (cleaned up) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002)).

"Beyond the procedural requirement of filing an affidavit, Rule 56[(d)] has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted). Additionally, although typically "an affidavit that complies with Rule 56(d) is essential," *Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017), a party may be excused from that formal requirement if the party "clearly explained its need for more discovery on a particular topic," *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015). So, "if a party does not satisfy Rule 56(d)'s technical requirements, he must at least affirmatively demonstrate that the discovery sought would enable him to 'adequately oppose the motion for summary judgment.'" *Id.* (quoting *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003)).

Generally speaking, denying a request for discovery under Rule 56(d), when the party who requested it has not had *any* opportunity for discovery in the case at

all, is an abuse of discretion. *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 453 (6th Cir. 2023) (citations omitted). But the Sixth Circuit has held that awarding summary judgment without granting a Rule 56(d) request is still appropriate, even pre-discovery, when (1) the Rule 56(d) motion is supported by mere "general and conclusory statements" that fail to include "any details or specificity," *Zakora*, 44 F.4th at 479 (internal quotation marks and citations omitted), or (2) "further discovery would not have changed the legal and factual deficiencies," *Heard v. Caruso*, 351 F. App'x 1, 14–15 (6th Cir. 2009) (quotation omitted).

In this case, McAfee (who is proceeding pro se) has not filed a Rule 56(d) motion, nor has she filed the required affidavit. But, in her opposition, she discusses several reasons why she believes that summary judgment is premature at this juncture. (Doc. 4, #87–89). Specifically, McAfee says that she needs more discovery on (1) Early Warning's mailing practices, (2) whether the alleged disclosure was ever generated and mailed, (3) delivery confirmation records, and (4) prior complaints against Early Warning. (*See id.*).

At this early stage, the Court concludes that McAfee has a point, in particular with respect to the second item—whether in fact Early Warning mailed the disclosure. Recall that the documentary evidence Early Warning has submitted consists of the cover pages from that disclosure, which it says it sent to McAfee. (*See* Doc. 7). While that likely settles whether the disclosure was *generated*, it doesn't necessarily preclude a reasonable trier of fact from concluding that the disclosure was not, in fact, mailed. And while the Bernier affidavit states that the disclosure was

17

mailed, McAfee submitted an affidavit in state court disputing receipt. Given those two arguably differing accounts, the Court concludes that this is not a case (at least not yet) in which the evidence is "so one-sided that one party must prevail as a matter of law."[4] *Amway Distribs.*, 323 F.3d at 390 (quoting *Anderson*, 477 U.S. at 251–52).

In short, the Court concludes that McAfee is entitled to limited discovery directed solely at further exploring whether Early Warning in fact mailed the disclosure as it said. For example, she can request documents disclosing Early Warning's process for receiving and responding to consumer requests, its processes for mailing documents more generally, and any documents it maintains confirming that responses to consumer requests (including this one) were in fact sent, as well as deposing Bernier or other persons likely to have knowledge of whether and how the disclosure at issue here was, or would have been, sent. If it turns out that she cannot create a genuine dispute as to Early Warning's claim that it actually mailed the disclosure, then this will be a short-lived case. But, at least for now, the Court **DENIES** Early Warning's motion **WITHOUT PREJUDICE** for the purposes of allowing limited discovery of the type identified herein.

---

[4] While these two accounts are not necessarily contradictory—the disclosure could have been lost in the mail—McAfee's testimony that she did not receive the disclosure at least raises the *possibility* that she could create a dispute of material fact if permitted discovery. So, she has demonstrated that discovery is warranted on that question. The Court fails to see how McAfee could create a dispute as to whether the disclosure was sent absent discovery on that topic, as she was not privy to what actions Early Warning did or did not take.

18

## CONCLUSION

For the reasons stated above, the Court **DENIES** McAfee's Motion for Leave to File a Surreply (Doc. 6), and **DENIES** Early Warning's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 3) **WITHOUT PREJUDICE**.

**SO ORDERED.**

March 12, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

19